[Cite as *State v. Brown*, 2014-Ohio-896.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. 12 MA 202 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| DARRELL BROWN | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS: Criminal Appeal from the Youngstown Municipal Court of Mahoning County, Ohio
Case No. 10 TRD 636

JUDGMENT: Affirmed.

APPEARANCES:

For Plaintiff-Appellee: Atty. Dana Lantz
Youngstown City Prosecutor
26 S. Phelps Street
Youngstown, Ohio 44503

For Defendant-Appellant: Atty. James Wise
Betras, Kopp & Harshman, LLC
6630 Seville Dr.
Canfield, Ohio 44406

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Joseph J. Vukovich

Dated: March 5, 2014

WAITE, J.

**{¶1}** Appellant Darrell Brown appeals the order of the Youngstown Municipal Court finding him in direct contempt of court. Appellant argues on appeal that the municipal court abused its discretion when finding him in contempt. Based on the record here, Appellant's single assignment of error is without merit and is overruled.

<u>Factual and Procedural History</u>

**{¶2}** According to Appellant's statement of facts he was sentenced to thirty days in jail due to a probation violation that occurred on September 19, 2012. Appellant was released on October 11, 2012 after the trial court granted him eight days of credit for time served. The transcript of proceedings indicates that Appellant appeared in Youngstown Municipal Court on October 15, 2012. Although Appellant was present in the courtroom, he was not scheduled for a hearing on that date. The events that led to Appellant's contempt began when a bailiff informed the presiding judge of Appellant's presence in the courtroom. When the judge asked why Appellant was there, Appellant's probation officer responded that Appellant had refused to enter the probation office. The judge then referred to the terms of Appellant's release: "probation, report monthly until community service is completed, fines, costs and fees, additional 80 hours, credit for one day community service," and inquired whether Appellant had community service to perform at that time. (Tr., p. 3.) The probation officer confirmed that Appellant did have service to perform at that time, and the court responded, "[i]f he fails to do that, then just let me know and there will be a capias for him and he will get another probation violation and go back to jail." (Tr., p. 3.)

**{¶3}** At that point, Appellant attempted to address the court. The court responded by instructing Appellant that he had an order to follow and that if he failed to follow the order he would return to jail. The transcript reflects that another speaker then instructed Appellant that force would be used if he did not remain quiet. When he failed to do as instructed, Appellant was ordered to place his hands in front of him so that he could be restrained. This order was repeated six times, while Appellant apparently failed to comply. Appellant was then informed that he was resisting arrest. Appellant continued to dispute with the unidentified speaker while the order to put his hands in front of him was repeated two more times. It was at that point that the trial court judge stated: "10 TRD 636, Defendant in direct contempt of Court, 30 days jail." A written version of this order appears in the record and was journalized on that same day. (Tr., p. 4.) Appellant filed a notice of appeal from this order; his sentence has been stayed pending the outcome of this appeal.

Assignment of Error

THE TRIAL COURT ERRED IN FINDING THE DEFENDANT IN CONTEMPT.

**{¶4}** The power of a court to punish contemptuous conduct is derived from its inherent authority as well as from statute. *Burt v. Dodge*, 65 Ohio St.3d 34, 35, 599 N.E.2d 693 (1992); *Zakany v. Zakany*, 9 Ohio St.3d 192, 459 N.E.2d 870 (1984), syllabus. Contempt proceedings are typically classified as civil or criminal, based on the purpose of the sanctions imposed. *State v. Kilbane*, 61 Ohio St.2d 201, 205, 400 N.E.2d 386 (1980). If the sanctions are intended to coerce the contemnor to comply

with lawful orders of the court, the contempt proceeding is civil. *Id.* at 204-205. On the other hand, if the punishment is punitive in nature and is designed to vindicate the court's authority, the contempt proceeding is criminal. *Id.* "[C]ivil contempts are characterized as violations against the party for whose benefit the order was made, whereas criminal contempts are most often described as offenses against the dignity or process of the court." *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 555, 740 N.E.2d 265 (2001).

**{¶5}** Courts distinguish not only between civil and criminal contempt, but also between indirect and direct contempt. Indirect contempt occurs outside of the presence of the court. *In re Lands*, 146 Ohio St. 589, 595, 67 N.E.2d 433 (1946). Direct contempt occurs in the presence of the court and has been defined to include "conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." *Denovchek v. Bd. of Trumbull Cty. Commrs.*, 36 Ohio St.3d 14, 15, 520 N.E.2d 1362 (1988), quoting *Windham Bank v. Tomaszczyk*, 27 Ohio St.2d 55, 56, 271 N.E.2d 815 (1971). "Courts, in their sound discretion, have the power to determine the kind and character of conduct which constitutes direct contempt of court." *Kilbane* at paragraph one of the syllabus.

**{¶6}** Direct contempt is defined in R.C. 2705.01 as "misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice." R.C. 2705.01; *Kilbane* at 204. In Ohio, R.C. 2705.01 "merely restates the inherent power of a court to summarily punish contemptuous acts committed in the presence

of the court." *In re Carroll*, 28 Ohio App.3d 6, 8, 501 N.E.2d 1204 (8th Dist.1985), fn. 5.

{¶7} A court may summarily punish a person for direct contempt on two conditions: first, the judge must have personal knowledge of the disruptive conduct "acquired by his own observation of the contemptuous conduct." *In re Oliver*, 333 U.S. 257, 275, 68 S.Ct. 499, 92 L.Ed. 682 (1948); R.C. 2705.01. Second, the conduct must pose "an open threat to the orderly procedure of the court and such a flagrant defiance of the person and presence of the judge before the public" that, if "not instantly suppressed and punished, demoralization of the court's authority will follow." *Oliver* at 275; R.C. 2705.01; *In re Thomas*, 1st Dist. No. C-030429, 2004-Ohio-373. Direct contempt of court occurs in a way so closely related to the court itself that a finding may occur summarily, and the court is not required to provide the contemnor with a hearing. *In re Purola*, 75 Ohio App.3d 306, 596 N.E.2d 1140 (3d Dist.1991).

{¶8} It is apparent from the basic principles of contempt law that a court may punish a person for direct contempt who has threatened or disrupted court proceedings, even if the person did not specifically disobey any particular court order issued before or during the proceeding. "[The defendant's] acts of interrupting the proceedings and of leaving the courtroom while the court rendered its decision occurred in the judge's presence and required immediate punishment to vindicate the court's authority." *State v. Stegall*, 1st Dist. Nos. C-110767, C-120112, C-120113, 2012-Ohio-3792, ¶41. A person may also be held in contempt for failure to appear,

or even arriving late, at a hearing. R.C. 2705.02; *State v. Moody*, 116 Ohio App.3d 176, 181, 687 N.E.2d 320 (12th Dist.1996).

**{¶9}** Contempt involves conduct which engenders disrespect for the administration of justice or which tends to embarrass, impede or disturb a court in the performance of its function. *Denovchek*, *supra*. The law of contempt is intended to uphold and ensure the effective administration of justice, secure the dignity of the court, and to affirm the supremacy of law. *Cramer v. Petrie*, 70 Ohio St.3d 131, 133, 637 N.E.2d 882 (1994). Contempt findings and sanctions should not be reversed on appeal unless it is clear that the trial court abused its discretion. *State ex rel. Ventrone v. Birkel*, 65 Ohio St.2d 10, 417 N.E.2d 1249 (1981). An abuse of discretion consists of more than an error of judgment; it connotes an attitude on the part of the trial court that is unreasonable, unconscionable, or arbitrary. *State v. Lessin*, 67 Ohio St.3d 487, 620 N.E.2d 72 (1993).

**{¶10}** The transcript of Appellant's appearance in court on October 15, 2012, completely supports the trial court's reasons for holding Appellant in contempt. It is clear from the outset that Appellant's presence in the courtroom was an unscheduled disruption to the court's schedule, and that the disruption escalated when Appellant's behavior resulted in his arrest in the courtroom. Appellant's presence in the courtroom because he was refusing to comply with the terms of his release and altercation with the arresting officer and refusal to follow either the orders to quiet down or submit to arrest prevented the court from any performance of its function until Appellant was removed. Appellant does not explain his behavior or otherwise

suggest any legal reason why the trial court's action in this instance was improper. The record speaks for itself. The trial court's contempt order was not unreasonable under the circumstances. Appellant's single assignment of error is overruled and the municipal court's order is affirmed.

## Conclusion

**{¶11}** The trial court's decision to hold Appellant in contempt was not unreasonable. Appellant's actions caused a complete disruption of court proceedings and prevented the hearing of any other matter until Appellant was removed. Appellant's single assignment of error is without merit and is overruled. The judgment of the trial court is affirmed.

Donofrio, J., concurs.

Vukovich, J., concurs.