[Cite as *Lelak v. Lelak*, 2019-Ohio-4807.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| M. ANGELA LELAK (aka SIDDALL) | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 28243 |
| | : | |
| v. | : | Trial Court Case No. 1982-DR-1530 |
| | : | |
| JOHN W. LELAK, JR. | : | (Appeal from Common Pleas Court – |
| | : | Domestic Relations Division) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 22nd day of November, 2019.

. . . . . . . . . . .

JAMES R. KIRKLAND, Atty. Reg. No. 0009731, 10532 Success Lane, Dayton, Ohio 45409
    Attorney for Plaintiff-Appellant

DALMA C. GRANDJEAN, Atty. Reg. No. 0024841, One South Main Street, Suite 1590, Dayton, Ohio 45402
    Attorney for Defendant-Appellee

. . . . . . . . . . . . .

TUCKER, J.

**{¶ 1}** Angela Lelak (nka Siddall) appeals from a judgment of the Montgomery County Court of Common Pleas, Domestic Relations Division, which held that John Lelak's obligation to pay Siddall retirements benefits was discharged in bankruptcy, that he was not in contempt for failing to give Siddall a 10-day notice prior to withdrawing funds from his retirement account, and that Siddall was not entitled to attorney fees. For the reasons that follow, we reverse and remand for further proceedings.

## I.      Facts and Procedural History

**{¶ 2}** In 1983, Lelak and Siddall divorced after 15 years of marriage. Of relevance hereto, the "final decree and judgment of divorce", issued on January 31, 1983, stated:

> As to the retirement benefits of the parties, the court is mindful that they cannot be withdrawn by either party at the present time so long as the parties are employed. The court finds that the total retirement of both parties is Twenty Thousand Nine Hundred Thirty-Nine Dollars ($20,939.00) which, for simplicity's sake, is rounded off to $20,900. Plaintiff shall keep the $87.00 in her retirement account and shall be entitled to receive from the Defendant the sum of Ten Thousand Three Hundred Sixty-Three Dollars ($10,363.00). The Defendant shall retain the balance. The Defendant shall pay the sum of $10,363.00 to the Plaintiff commencing with the first payday after the closing of the house in the amount of Fifty Dollars ($50.00) per week, unless Plaintiff has been paid in full by that time.
>
> * * *

IT IS FURTHER ORDERED that the Defendant is not allowed to withdraw any retirement benefits from either account without ten days written notice to the Plaintiff.

Dkt. No. 2.

{¶ 3} An amended final decree and judgment of divorce was entered on February 3, 1983 which, in pertinent part, amended the last paragraph to read:

It is further ordered that the Defendant is not allowed to withdraw any retirement benefits from either account without ten days written notice to the Plaintiff at any time prior to the full payment due to the Plaintiff.

Dkt. No. 4.

{¶ 4} In June 1983, Lelak filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. *See In re Lelak*, 36 B.R. 164 (Bankr.S.D.Ohio 1984). In his petition, Lelak "named [Siddall] as an unsecured creditor for 'non-alimony obligations arising from the divorce judgment and decree, incl. retirement & Citicorp' in the amount of $18,050." *Id.* at 166. Siddall filed a complaint in the bankruptcy court for a determination of "the dischargeability of her claim for $10,363 in 'retirement benefits' against [Lelak] arising out of their divorce Judgment and Decree." *Id.* at 165.

{¶ 5} In the portion of the bankruptcy opinion labeled "DECISION," the court stated, "[i]If the $50 payments from the retirement funds are considered alimony, maintenance, or support as alleged by [Siddall], they are not dischargeable per Section 523(a)(5); whereas if the payments are considered as a property settlement, as alleged by [Lelak], they are dischargeable." *Id.* The court ultimately concluded that "the state court Decree as to the division of the retirement fund constitute[d] a division of property and not alimony

and support." *Id.* at 169. Thus, the court found that the weekly payments were dischargeable in bankruptcy.

{¶ 6} The bankruptcy court opinion then went on to state:

Finding that the weekly advance payments applying to the retirement benefits do not constitute alimony and support, however, should not be construed as interference with the state court Decree as to the division of the marital property in esse.[1] For that reason, this court has specifically iterated and emphasized above the state court prohibition, "that the Defendant is not allowed to withdraw any retirement benefits from either account without ten days written notice to the Plaintiff" [And Plaintiff herein]. The extent to which such funds are vested and the extent to which they may be so encumbered under the Ohio law is not now an issue sub judice, and is a question of state law properly to be determined by the state court. In any event, the judgment by this court should not be deemed any alteration of or interference in the implementation of the division of the retirement benefits property as vested on the date of the state court Decree, when payable.

THEREFORE, IT IS HEREBY ORDERED that the debt from the retirement benefits is dischargeable in bankruptcy as to the advance payments which the state court ordered be paid in weekly installments.

*Id.* at 169.

---

[1] "In esse" is defined to mean "[a]ctually existing." *Black's Law Dictionary* 397 (5th Ed. 1983).

{¶ 7} In 1998, Lelak, without notice to Siddall, withdrew the pre-tax sum of $181,035.44 from his retirement account. In April 2016, Siddall filed a motion to show cause in which she sought to have Lelak found in contempt for failing to provide her with the 10-day notice required by the decree. Her motion also sought an order requiring Lelak to pay her the monies owed under the decree as well as any growth thereon. Finally, her motion requested an award of attorney fees and costs.

{¶ 8} Following discovery, hearings were conducted in April 2017, August 2017 and June 2018. Both parties presented testimony of attorneys engaged in the practice of bankruptcy law who provided opinions as to the correct interpretation of the bankruptcy court's opinion. The parties also presented expert witnesses regarding the present day value of Siddall's share of the retirement account based upon the assumption that she had been paid her portion thereof. Thereafter, the magistrate issued a decision finding Lelak in contempt for failing to provide the required 10-day notice and for failing to pay Siddall her share of the benefits after their withdrawal. The magistrate awarded Siddall the sum of $90,053.64 as her portion of the retirement account, as well as $14,652 in attorney fees.

{¶ 9} After Lelak filed objections, the trial court issued a judgment in which it stated that the only mechanism in the divorce decree for payment of Siddall's share of the retirement benefits was the order that Lelak make weekly payments to her. The trial court reasoned that, because the decree set forth no other method for payment, "[o]ne could assume then, that the entire $10,636.00 owed by [Lelak] to [Siddall] was to be discharged in $50.00 weekly installments until satisfied, about 4 years, unless he paid her a lump sum to satisfy the obligation." Dkt. No. 88. The trial court further stated that

there was no dispute that those weekly payments had been discharged by the bankruptcy court.

{¶ 10} The trial court went on to discuss the language used by the bankruptcy court regarding its refusal to interfere with the state divorce court, as set forth in paragraph six above, and stated:

> After consideration, the court finds that [the bankruptcy judge] was being precautionary in his syntax. He did not intend to make a determination as to the viability of the debt owed by [Lelak] to [Siddall]. This court believes that [the bankruptcy judge], by stating the above, made sure that his Decision would not be interpreted as interfering with the divorce court's authority to determine the amount of [Siddall's] share of the retirement benefits, the method by which her share would be paid, and whether her share was vested and/or encumbered. [The bankruptcy judge's] responsibility was to determine whether the state court's order to pay [Siddall] her share of the retirement benefits was intended as a property division and not support or maintenance. [The bankruptcy judge] ultimately discharged the debt "from the retirement benefits … *as to the advance payments which the stated court ordered."*

(Emphasis in original.) *Id.*

{¶ 11} Based upon this reasoning, the trial court found as follows:

> [The bankruptcy judge's] intent was to discharge the state court's order for [Lelak] to pay the $10,636.00 in retirement benefits, *payable in $50.00 installments.* The same well-reasoned analysis of the support/property

division extends to the state court order that [Lelak] pay [Siddall] $10,363.00. There was no indication that the order to pay $10,363.00 was intended as anything other than to provide [Siddall] with her share of the parties' property division. Thus, this court finds that [the bankruptcy judge's] order to discharge the weekly payments discharged the underlying obligation to pay [Siddall] $10,363.00 as well.

(Emphasis in original.) *Id.*

{¶ 12} The trial court reversed the magistrate's finding of contempt as well as the award of $90,053.64 and attorney fees.

{¶ 13} Siddall appeals.

## II. Analysis

{¶ 14} Siddall asserts the following three assignments of error on appeal:

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT OVERRULED THE CONTEMPT ORDER AGAINST JOHN FOR THE FAILURE TO PAY ANGELA HER SHARE OF HIS RETIREMENT BENEFITS.

THE TRIAL COURT ABUSED ITS DISCRETION BY OVERRULING THE MAGISTRATE'S DECISION AND FINDING JOHN LELAK IS NOT IN CONTEMPT FOR FAILING TO PROVIDE ANGELA 10 DAYS NOTICE PRIOR TO HIS WITHDRAWAL OF FUNDS FROM HIS RETIREMENT ACCOUNTS.

THE TRIAL COURT ABUSED ITS DISCRETION BY OVERRULING THE AWARD OF ATTORNEY FEES IN THE AMOUNT OF $14,654.00.

{¶ 15} This case centers on the interpretation of the bankruptcy court decision in the adversarial proceeding brought by Siddall in Lelak's 1983 bankruptcy action. Siddall, Lelak and the lower court agree that the bankruptcy court discharged the $50 recurring weekly payments. However, the question at issue is whether the bankruptcy court's decision also acted to deprive Siddall of all claims to Lelak's retirement account. As noted, the magistrate concluded that the overall obligation was not discharged and held Lelak in contempt. The trial court disagreed, concluding that the entire obligation was discharged, and that Lelak thus was not in contempt. Therefore, we must determine whether the trial court's interpretation of the bankruptcy decision was correct.

{¶ 16} "While outcomes in bankruptcy cases largely depend on the provisions of the Bankruptcy Code, many aspects of bankruptcy cases, frequently critical aspects, depend on applicable state law." *In re Jeffers*, 572 B.R. 681, 684-685 (Bankr.N.D.Ohio 2017). "Most fundamental among those is that property interests are created and defined by state law and bankruptcy courts do not disturb them unless some federal interest requires a different result." *Id.*, citing *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

{¶ 17} In Ohio, pension or retirement benefits accumulated during the course of a marriage are marital assets subject to property division in a divorce action. *Graham v. Graham*, 2d Dist. Greene No. 92-CA-114, 1993 WL 350038, *4, citing *Holcomb v. Holcomb*, 44 Ohio St.3d 128, 541 N.E.2d 597 (1990). Further, Ohio courts have held that "[o]nce the division of property is fixed by the court, both spouses are legally entitled to the share respectively allotted to them." *Zimmie v. Zimmie*, 11 Ohio St.3d 94, 97, 464 N.E.2d 142 (1984), citing *Wolfe v. Wolfe*, 46 Ohio St.2d 399, 412-413, 350 N.E.2d 413

(1976). *See also Erb v. Erb*, 75 Ohio St.3d 18, 22, 661 N.E.2d 175 (1996) (divorce decree found to have awarded wife a separate ownership interest in the husband's pension). Bankruptcy courts have also determined that an award to a wife of a portion of the husband's pension becomes the "wife's sole and separate property." *In re Wilson*, 158 B.R. 709, 711 (Bnkr.S.D.Ohio 1993), citing *Adamo v. Ledvinka*, 144 B.R. 188, 192 (Bankr.M.D.Ga.1992), citing *Bush v. Taylor*, 912 F.2d 989, 993 (8th Cir.1990); *In re Benich*, 811 F.2d 943, 945 (5th Cir.1987); *In re Chandler*, 805 F.2d 555 (5th Cir.1986); *In re Stolp*, 116 B.R. 131 (Bankr.W.D.Wis.1990); *In re Corrigan*, 93 B.R. 81 (Bankr.E.D.Va.1988); *In re Mace*, 82 B.R. 864, 868 (Bankr.S.D.Ohio 1987); *In re Manners*, 62 B.R. 656 (Bankr.D.Mont.1986); *In re Hall*, 51 B.R. 1002 (S.D.Ga.1985).

{¶ 18} Under the terms of the parties' divorce decree, the approximate $20,000 in Lelak's retirement account was appropriately designated as marital property, and Siddall was awarded one-half of that amount. Therefore, before the bankruptcy petition was filed, there existed a valid pre-petition judicial division of marital property which granted Siddall an interest in the subject property. That interest vested – that is, became fixed – at the time the divorce decree was filed. However, at the time of the divorce, Lelak's retirement benefits with the State Teachers Retirement System (STRS) were not subject to a qualified domestic relations order, nor could the benefits be withdrawn as Lelak had not retired. Thus, the divorce court ordered Lelak to make advance payments in the sum of $50 per week to Siddall to satisfy her portion of the account.

{¶ 19} The analysis set forth in the bankruptcy court's opinion focused on whether the $50 weekly payments were dischargeable under the provisions of 11 U.S.C. 523(a)(5), which provided, in pertinent part, that "[a] discharge * * * does not discharge

an individual debtor from any debt * * * to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of both spouse or child, in connection with * * *" a divorce action. The court found that the payments were not in the nature of support, and were thus dischargeable.

{¶ 20} A reading of the bankruptcy court decision demonstrates that the bankruptcy court recognized a distinction between the $50 weekly payments and Siddall's fixed property interest in the retirement account. The discharge of the $50 payments made sense, because any advance payments made by Lelak prior to obtaining access to the retirement funds necessarily had to be made from his separate property. In other words, the requirement that Lelak pay Siddall out of his separate property created a debtor-creditor relationship. Thus, as found by the bankruptcy court, such payments were a dischargeable debt.

{¶ 21} The indicated distinction is set forth in that portion of the bankruptcy court decision which states that the issues of whether the retirement funds were vested and whether they could be encumbered were a matters of state law that were not before it. The court also stated that its judgment did not interfere with, or alter, the implementation of the division of the retirement funds. Again, such an interpretation makes sense because a complete discharge of Siddall's underlying right to her portion of the pension would result in a windfall to Lelak as he would retain the entirety of the pension, which had been deemed marital property to be divided between the parties.

{¶ 22} Based upon our interpretation of the bankruptcy decision, we conclude that the trial court erred in finding that the bankruptcy court discharged Siddall's interest in the retirement account. The decree of divorce granted Siddall a property interest in the

retirement account, and the bankruptcy court's decision did not divest her of her judicially-declared ownership interest.

{¶ 23} With this determination in mind, we now turn to Siddall's assignments of error. As noted, her first two assignments of error relate to her claim that Lelak's failure to pay her the awarded pension and the failure to give her notice of the withdrawal of the pension benefits constitute contempt. Her final assignment of error relates to the attorney fees awarded by the magistrate in connection with its finding of contempt.

{¶ 24} Since the trial court's assessment of the issues of contempt and attorney fees was based upon an incorrect interpretation of the bankruptcy court's decision and judgment, we conclude that it necessarily erred in its review of the magistrate's decision and Lelak's objections thereto. Thus, a reversal and remand is required. As issues of contempt require findings of fact, we note that whether Lelak should be found in contempt is a matter for the trial court to address in light of our decision. However, our decision should not be construed as requiring a contempt finding, an award of attorney fees, or a finding that Siddall is entitled to a particular monetary award.[2]

{¶ 25} Accordingly, Siddall's assignments of error are sustained.

## V.   Conclusion

{¶ 26} Siddall's assignments of error being sustained, the judgment of the trial court is reversed and this matter is remanded to the trial court for further proceedings.

. . . . . . . . . . . . .

---

[2] A contempt finding in Lelak's favor would conclude Siddall's pending motion. But, since Siddall's interest in the STRS account was not discharged in bankruptcy, such a finding would not resolve Lelak's liability to Siddall for her interest in the now-depleted account.

DONOVAN, J., concurs.

HALL, J., concurs:

{¶ 27} I agree with the analysis, conclusions and disposition in the lead opinion. I write separately though to express what our opinion and decision does not include.

{¶ 28} Although we have determined that the trial court was incorrect in rejecting the magistrate's decision and in its conclusion that the 1984 bankruptcy court decision discharged Siddall's claim to any part of the STRS account, our reversal and remand do not mean the trial court must adopt the magistrate's decision. There are other aspects of the magistrate's decision, and the objections thereto, that the trial court, in its sound discretion, might address on remand.

{¶ 29} For instance, the 1983 divorce decree does not provide any means for distribution of Siddall's interest other than the periodic payments which were eliminated by the bankruptcy court. Defendant's objections to the Magistrate's Decision III and VI. Therefore, there could be a question whether a motion for contempt is a proper manner to modify the 1983 decree to provide distribution to Siddall, unless the motion were treated in part as a motion for relief from judgment, because the decree itself did not provide for any alternative distribution.

{¶ 30} The delay between the bankruptcy and the contempt motion may be insufficient to deny Siddall an equitable portion of the funds to which Lelak had access and use, because the motion was made 32 years after the bankruptcy which eliminated the decree's enforceable order for distribution and 18 years after Lelak apparently retired

and gained access to the STRS account funds.[3]   But such a delay might be considered in determining whether Lelak should be held in contempt for violating an order in the divorce decree that was arguably vitiated by the 1984 bankruptcy decision, especially when the contempt motion was not made until 18 years after withdrawal of the funds.

{¶ 31} Our decision does not require the trial court to adopt the magistrate's evaluation of the current-day value of Siddall's share of the pension or whether that amount could be paid with tax-deferred dollars. There are markedly different expert opinions of the December 31, 2016 value of Siddall's interest from $28,600.00 to $90,053.64. Our decision does not limit the sound discretion of the trial court, upon remand, from utilizing any of the provisions of Civ.R. 53 in proceeding upon its independent evaluation of the magistrate's decision and its ruling on the objections.

Copies sent to:

James R. Kirkland
Dalma C. Grandjean
Hon. Timothy D. Wood

---

[3] "R.C. 3307.711 (now R.C. 3307.42) provides that the right to receive a retirement benefit under the STRS vests at the time the benefit is actually granted, and not before" *Smith v. State Teachers Retirement Bd.,* 10th Dist. Franklin No. 97APE07-943, 1998 WL 54362, *3 (Feb. 5, 1998).